UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK GONZALEZ, et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>CHATTEM, INC.,<br><br>    Defendant. | Case No. 23-cv-00102-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**<br><br>Re: Dkt. No. 39 |

Pending before the Court is Defendant Chattem Inc.'s Motion to Dismiss and associated Request for Judicial Notice. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS in part and DENIES in part** Defendant's motion, Dkt. No. 39, and **GRANTS** Defendant's Request for Judicial Notice, Dkt. No. 39-1.

## I.  BACKGROUND

On January 9, 2023, Mark Gonzalez filed a putative class action complaint against Chattem, Inc., Sanofi Aventis US LLC, and Sanofi US Services Inc. claiming that their manufacturing, marketing, advertising, and selling of the dietary supplement "Unisom Simple Slumbers™" was misleading. Dkt. No. 1 ¶¶ 1–2. Less than a month after Mr. Gonzalez filed the case, he voluntarily dismissed Sanofi-Aventis US LLC and Sanofi US Services Inc. Dkt. No. 22. The parties then stipulated to allow the filing of an amended complaint.

The First Amended Complaint, brought this time by Mark Gonzalez and Donnie Wesley Sr. on behalf of themselves and a putative class (the "Plaintiffs"), tracks the allegations made in the original complaint. Dkt. No. 35 ("FAC"). Plaintiffs allege that when they purchased the sleep aid Unisom Simple Slumbers™ (the "Product"), they saw and relied on the front-label tagline

"GET A GOOD NIGHT'S SLEEP, NATURALLY." FAC ¶ 1, 3. Since Plaintiffs' pleadings bear on the front-label representations, the Court reproduces them here[1]:



Plaintiffs allege that they understood the modifier "NATURALLY" to indicate that the Product contained no synthetic or artificial ingredients – an impression, they argue, that Defendant

---

[1] Defendant requests that the Court take judicial notice of documents representing the complete labels for the 60 count and 120 count gummies as they appeared in Spring 2022 and as they currently appear. Dkt. No. 39-1 (Request for Judicial Notice); Dkt. No. 39-2 (Exhibits A-D). Plaintiffs do not oppose the request. In *Khoja v. Orexigen Therapeutics*, the Ninth Circuit clarified the judicial notice rule and incorporation by reference doctrine. *See* 899 F.3d 988 (9th Cir. 2018). Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court may also, under the incorporation by reference doctrine, consider certain documents as though they were part of the complaint itself. Doing so is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *Khoja*, 899 F.3d at 1002. Given that the accuracy and authenticity of the proffered labels is not readily subject to dispute, the FAC only pictures the Product's front labels, and the labels form the basis of Plaintiffs' complaint, the Court **GRANTS** Defendant's requests for judicial notice, Dkt. No. 39-1, to the extent they indisputably portray the labels at issue.

2

reinforced by placing the tagline over a green background and beside graphical representations of natural goods like "flowers, raspberries, lemons, and honey." FAC ¶¶ 2, 3, 17. They allege that based on the front label representation, a reasonable consumer would expect the Product to contain only "natural" ingredients, or would at least expect those ingredients listed on the front label (i.e. melatonin and vitamin B6) to be "natural," meaning not "synthetic, artificial, or subject to chemical modification and processing." *Id.* ¶16, 18–21. Plaintiffs allege that because the Product – contrary to their expectations – *does* contain synthetic and artificial ingredients, and because synthetic and artificial ingredients cannot "naturally" induce a good night's sleep, Defendant's marketing misled them and similarly situated consumers. *Id*. ¶¶ 22–28. Based on these allegations, Plaintiffs assert causes of action under various California state laws: the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. (the "FAL"); and Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL"). *Id*. ¶¶ 5; 44–76.

On April 14, 2023, Defendant moved to dismiss the complaint in its entirety, arguing that (1) Plaintiff Wesley lacks standing, (2) the Product's front label made no misrepresentation that could give rise to a claim for relief under the CLRA, FAL or UCL, (3) Plaintiffs lack standing for injunctive relief, and (4) Plaintiffs are foreclosed from pursuing equitable and injunctive relief because they have an adequate remedy at law. Dkt. No. 39 ("Mot.").

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction[,]" and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id*. The issue of Article III standing is jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)[.]" *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

3

1    Rule 12(b)(1) motions to dismiss based on an asserted lack of subject matter jurisdiction may be "facial" or "factual." *See White*, 227 F.3d at 1242.  In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  The challenger asserts that the complaint's allegations are insufficient "on their face" to invoke federal jurisdiction.  *Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  To resolve this challenge, the court assumes that those allegations are true and draws all reasonable inference in favor of the party opposing dismissal.  *See Wolfe*, 392 F.3d at 362.

Where, on the other hand, the jurisdictional attack is factual, "'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1083 n.8 (9th Cir. 2012) (quoting *Safe Air*, 373 F.3d at 1039).  Once challenged, the plaintiff must support her jurisdictional allegations with "competent proof."  *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010).  To resolve a factual attack, the court need not "presume the truthfulness of the plaintiff's allegations" in the complaint and "'may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.'" *Wood*, 678 F.3d at 1083 n.8 (quoting *Safe Air*, 373 F.3d at 1039); *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").  However, where "'the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment.'" *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) (quoting *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir.1987)).

**B.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the

4

complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### III.  DISCUSSION

#### A.  Standing

To meet his burden of establishing standing, a plaintiff invoking federal jurisdiction must show he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). These elements are mandatory, and there is no standing without injury. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200, 2204–07 (2021) ("No concrete harm, no standing."). To bring a suit in federal court, a plaintiff must "show, *inter alia*, that he has actually been injured by the defendant's challenged conduct." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001 (9th Cir. 2001) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, Inc., 528 U.S. 167, 180 (2000)).

By its motion, Defendant brings a factual attack on Plaintiff Wesley's allegations under Rule 12(b)(1), arguing that he has not shown injury sufficient to give rise to standing since he could not have purchased the Product as alleged.[2] Mot. at 15–16. The Court agrees.

More specifically, Defendant zeroes in on the allegation that Mr. Wesley purchased the 60-count variation of the Product in "Midnight Raspberry" flavor in "late 2019 and around the middle of 2020 . . . at a CVS retail store in Los Angeles County California." FAC ¶ 10; Mot. at 16. Defendant argues that Mr. Wesley did not purchase the product as alleged, and relies on the declaration of Corey Stein, Chattem's National Account Manager for CVS Health Consumer Healthcare, to substantiate its position. Dkt. No. 39-3 ("Stein Decl.") ¶ 1. In his declaration, Mr. Stein attests under penalty of perjury that according to Defendant's records, the product Mr. Wesley allegedly purchased in 2019 or 2020 was not shipped to any U.S. retailer until *2021*, such that Mr. Wesley could "not possibl[y]" have purchased the product at issue in the manner alleged in the FAC. *Id*. ¶¶ 3–4. In the absence of plausible allegations about Mr. Wesley's purchase – which is the transaction that gives rise to his alleged monetary injury – Defendant urges the Court

---

[2] While Defendant does not directly challenge Plaintiff Gonzalez's standing, it maintains that his "lack of substantiation and shifting recollections" is "troubling." Mot. at 16; *see also* Dkt. No. 42 ("Reply") at 11. For example, Defendant highlights that Mr. Gonzalez's allegations about what product he purchased and when he purchased it changed in the FAC after Defendant confronted Plaintiff with sales records showing no sales of the 120-count bottle of the Product in the "Midnight Raspberry" flavor at any CVS stores in San Francisco in April 2022. Mot. at 13–14, 16; Dkt. No. 39-3 ("Stein Decl.") ¶ 4. However, since Defendant does not by its motion dispute that Mr. Gonzalez has standing, Reply at 11, and since the Court has not independently identified a standing defect, the Court focuses its analysis on whether Mr. Wesley has standing.

to dismiss Mr. Wesley for lack of standing, citing *Sud v. Costco Wholesale Corporation*. No. 15-CV-03783-JSW, 2016 WL 192569 (N.D. Cal. Jan. 15, 2016). In *Sud* – a case concerning the labeling of farmed prawns from Thailand – Costco submitted plaintiff's membership account purchase records to show that she had not purchased the product that spawned her lawsuit, and the Court agreed that the plaintiff accordingly lacked Article III standing. *Id.* at * 3. Defendant maintains that the same result should follow here.

By making a factual attack on the FAC, Defendant shifts the burden to Plaintiffs to support their jurisdictional allegations with "competent proof." Plaintiffs submit a declaration by Mr. Wesley stating that his former allegations were "inadvertently incorrect[]" and that "[t]he dates on which [he] in fact purchased the Unisom Simple Slumbers 60 count Midnight Raspberry gummies at a CVS retail store in Los Angeles County were, to the best of [his] recollection, during the COVID-19 pandemic in or after 2021." Dkt. No. 41-1 ¶ 3 ("Wesley Decl."). Based on this declaration, Plaintiffs argue that Mr. Wesley has "shown he purchased the Product at CVS in a timeframe in which [Defendant's] declarant admits the Product was sold to CVS," and can therefore demonstrate injury. Opp. at 15.

While Mr. Wesley's declaration puts forth *different* allegations about his product purchase history that could support standing if true, it does not effectively rebut Defendant's uncontested factual attack on the allegation contained in the FAC claiming that Mr. Wesley purchased the challenged product at a CVS in "late 2019 and around the middle of 2020."[3] FAC ¶ 10. On the contrary, Mr. Wesley's declaration concedes that the allegations currently in the FAC are "inadvertently" erroneous, Wesley Decl. ¶ 3, and Plaintiffs do not argue that those allegations support standing. Though Plaintiffs attempt to distance these facts from *Sud*, the Court is persuaded that here, as there, dismissal is warranted where defendant's jurisdictional challenge successfully undermines the factual allegations in the operative complaint purporting to give rise to standing. However, the Court does not need to do what Defendant impliedly next requests: to

---

[3] Since Plaintiffs do not dispute the evidence presented by Defendant regarding the sale dates of the challenged product, the Court sees no need to resolve the parties' arguments regarding the applicability of the summary judgment standard.

read its Reply as a new Rule 12(b)(1) factual attack on Mr. Wesley's *declaration* and essentially foreclose him from amending his allegations about the timing of his purchase. Defendant is not barred from raising challenges to Plaintiffs' standing in the future, but the Court finds it premature to conclude that any amendment by Mr. Wesley could be nothing other than a "strategic recalibration" of his claims. Reply at 11.

The Court accordingly **GRANTS** Defendant's motion to dismiss Mr. Wesley for lack of standing but permits Plaintiffs one final opportunity to amend their complaint to address the jurisdictional defects identified. However, given that Plaintiffs' allegations regarding their purchase histories have been sloppy at best, Plaintiffs' counsel should carefully consider their Rule 11 obligations if they choose to replead the facts surrounding Mr. Wesley's purchase of the Product.

### B. Substantive Claims

Since Plaintiff Gonzalez has standing, the Court proceeds to consider Defendant's arguments regarding the putative class's substantive claims. Mot. at 15–26. The Court finds that Plaintiffs have done enough to survive a motion to dismiss.

The parties agree that the "reasonable consumer test" governs Plaintiffs' CLRA, UCL, and FAL claims. Mot. at 16; Dkt. No. 41 ("Opp.") at 19. Under this test, a plaintiff must "show that members of the public are likely to be deceived" by the challenged representation. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation and citation omitted); *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) ("This requires more than a mere possibility that [the] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." (internal citations omitted)).

The parties do not agree, however, on the application of that test to these facts. Plaintiffs urge that they have plausibly pled that Defendant's use of the modifier "naturally" deceives reasonable consumers about the character of the Product's ingredients and functioning in a manner that is not "neutralized" by the packaging as a whole. Opp. at 19–26. They further argue that their allegations present a factual question not susceptible to resolution at the motion to dismiss stage. *Id*. Defendant, for its part, contends that no reasonable consumer could "interpret the statement,

8

1  'GET A GOOD NIGHT'S SLEEP, NATURALLY' as a promise that the Product is 'all natural'
2  and contains no artificial or synthetic ingredients, as opposed to a description of how the Product
3  works." Mot. at 17. They essentially argue that Plaintiffs' allegations rest on the fungibility of the
4  adjective "natural" and the adverb "naturally," but that those modifiers are not interchangeable:
5  the product never claims to be "natural" or contain "natural" ingredients, but rather maintains that
6  it works "naturally" with the body's sleep cycle. *Id*. at 18; Dkt. No. 42 ("Reply") at 12.
7  Concluding that the phrase "naturally" connotes the absence of artificial or synthetic ingredients is
8  all the more unreasonable, according to Defendant, when viewed in the context of the Product's
9  overall packaging, which (1) states "Drug-Free" at the top of the label; (2) prominently discloses
10 ingredients melatonin and vitamin B6 (which are synthetic) right next to the challenged statement;
11 and (3) makes additional disclosures of ingredients that are synthetic on the side label. Mot. at
12 21–23. Given the overall packaging, Defendant argues that Plaintiffs cannot survive dismissal
13 because they have not "'sufficiently alleged how a reasonable consumer would be deceived into
14 believing that the products did not contain any synthetic ingredients given the express inclusion of
15 such ingredients on the product[] packaging." Mot. at 22 (quoting *McGinity v. Procter & Gamble*
16 *Co.*, 2021 WL 3886048, at *3 (N.D. Cal. Aug. 31, 2021), *aff'd*, 69 F.4th 1093 (9th Cir. 2023)).

17  Though Defendant's arguments imply that the phrase "naturally" is susceptible to one
18 meaning and one meaning only, the Court finds that there is "some ambiguity" as to the meaning
19 of the phrase "naturally" in the challenged statement. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882
20 (9th Cir. 2021). While the Product certainly makes no affirmative promise of being all-natural,
21 viewing the allegations in the light most favorable to plaintiffs, a reasonable consumer might
22 conclude that for a product to work "naturally" with one's sleep cycle, the product's components
23 must themselves be natural (i.e. not artificial or synthetic). Or, on the other hand, as Defendant
24 argues, a reasonable consumer might understand "naturally" to mean "without the aid of drugs,"
25 and not assume any correlation between how the Product works and the character of the
26 ingredients that comprise it.

27  As in *Moore*, a reasonable consumer considering the ambiguous phrase "naturally" would
28 need additional information – such as "something on the rest of the packaging" – to interpret its

9

meaning. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023).  In this case, the gaze of a reasonable consumer contemplating the challenged phrase would need only to drift slightly rightward to discover additional information: a partial list of Product ingredients, including melatonin, passionflower, lemonbalm and vitamin B6.  While Defendant maintains that the prominent disclosure of melatonin and vitamin B6 would tip off a reasonable consumer to the Product's synthetic nature, Plaintiffs allege that consumers "would not know the true nature of ingredients merely by reading the ingredient label."  Construing Plaintiffs' allegation in the light most favorable to them, the Court understand Plaintiffs to allege that reasonable consumers, like them, would not know that melatonin and vitamin B6 are synthetic.  Plaintiffs additionally allege that they do "not have any personal knowledge regarding the [Product] ingredients or the methods Defendants used to make them" and therefore "cannot accurately differentiate between ingredients that are naturally and synthetically made."  FAC ¶¶ 22, 65.  While Plaintiffs do not explicitly allege that they had, at the time of purchase, an expectation of melatonin or vitamin B6 being "natural," they plead that Plaintiffs only learned in 2022 "that the ingredients in the Products are not natural."  *Id*. ¶ 65.

Given Plaintiffs' allegation that a reasonable consumer would not know whether melatonin and vitamin B6 are synthetic or natural, the Court finds that the ambiguity of the phrase "naturally" persists notwithstanding the ingredients' prominent inclusion on the front label.  In resolving the ambiguity, the Court finds instructive the Ninth Circuit's recent holding in *McGinity*.  At issue in that case was a shampoo named "Pantene Pro-V NATURE FUSION."  While plaintiffs alleged that the phrase "Nature Fusion" indicated that the product did not contain any non-natural ingredients, the court found the phrase's meaning ambiguous because "[u]nlike a label declaring that a product is '100% natural' or 'all natural,' the front 'Nature Fusion' label d[id] not promise that the product is wholly natural."  *McGinity*, 69 F.4th at 1098.  In light of the ambiguity, the court held that where "a front label is ambiguous," courts "must consider what additional information other than the front label was available to consumers of [defendant's] products."  *Id*. (noting that "the ambiguity can be resolved by reference to the back label").  After considering the additional information on the back label, the Court upheld the lower court's dismissal, observing

that "[t]he ingredients list, which McGinity alleges includes many ingredients that are synthetic and *that a reasonable consumer would not think are natural*, clarifies that the rest of the ingredients are artificial and that the products thus contain both natural and synthetic ingredients." *Id*. at 1099 (emphasis added).

As in *McGinity*, the back label of the Product discloses ingredients (other than melatonin and vitamin B6) that Plaintiffs now know, and the parties agree, are synthetic, namely citric acid and sodium citrate. FAC ¶ 22. But unlike in *McGinity* (which concerned a back label disclosing ingredients like Yellow 5 and guar hydroxypropylitrimonium chloride), the parties disagree as to what reasonable consumers would understand about the Product's ingredients. Plaintiffs maintain that simply listing the ingredients cannot dispel the impression formed by the label that they are "natural," because "[c]onsumers would not know the true nature of the [Product's] ingredients merely by reading the ingredient label; its discovery requires investigation beyond the retail store and knowledge of chemistry beyond that of the average consumer." FAC ¶ 27; Opp. at 32.

Based on these allegations, the Court finds that it cannot determine as a matter of law at this stage of litigation that it would be implausible for a reasonable consumer to be misled into wrongly concluding, based on the entirety of the Product's packaging, that the challenged ingredients were "natural." Whether, for instance, the reasonable consumer could believe that vitamin B6 or citric acid is a "natural" ingredient is the kind of factual question properly resolved on a developed record instead of on a motion to dismiss. *Cf. Maxwell v. Unilever United States, Inc.*, No. 5:12-CV-01736-EJD, 2018 WL 1536761 (N.D. Cal. Mar. 29, 2018) (holding in case *without* an alleged front-label misrepresentation that it would not be reasonable for a consumer to assume that citric acid and other ingredients were natural in the absence of a warning about synthetic contents). Given the prominent front-label disclosure of ingredients that no one disputes are synthetic, the Court observes that Plaintiffs' claims will likely rise or fall based on their ability to prove that a reasonable consumer would not understand the challenged ingredients to be just that. Whether Plaintiffs can meet this burden a separate question to be resolved at a later stage of litigation.

For now, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' CLRA, FAL, and

11

1  UCL claims.

**C. Standing for Injunctive Relief**

Defendant argues that Plaintiffs lack standing to pursue injunctive relief. Mot. at 28-30; Reply at 20-23. The Court agrees.

To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation omitted). Wronged plaintiffs are entitled to injunctive relief only if they can show that they face a "'real or immediate threat . . . that [they] will again be wronged in a similar way.'" *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). In the context of false advertising cases, the Ninth Circuit has confirmed that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase[.]" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). A plaintiff may establish the required risk of future harm in two ways: (1) "the consumer's plausible allegations that [they] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to"; or (2) "the consumer's plausible allegations that [they] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was improved." *Id*. at 969–70.

Plaintiffs maintain that their allegations in the FAC are sufficient to confer standing for injunctive relief under *Davidson*. Opp. at 29–32. Those allegations state that Plaintiffs:

> continue[] to desire to purchase a "natural" sleep-aid supplement that works "naturally" as represented, and [they] would purchase a sleep-aid supplement including the Product in the future if it is in fact natural, i.e., free of any artificial and synthetic ingredients and ingredients subject to chemical modification and processing. However, as a result of Defendant's ongoing false advertising, [Plaintiffs are] and will be unable to rely on the "naturally" advertising when deciding in the future whether to purchase the Products.

FAC ¶¶ 9-10. These allegations, they argue, show that Plaintiffs want to purchase the Product in

1    the future but cannot rely on its advertising when evaluating that future purchase.  *See* Opp. at 30.

2    Defendant argues that because Plaintiffs only want to purchase a "natural" sleep aid –
3    which Defendant's Product is not, according to Plaintiffs – they have not plausibly pled an intent
4    to purchase the Product in the future absent an ingredient (as opposed to label) reformulation.
5    Mot. at 28.  Citing *Brown v. Van's Int'l Foods, Inc.* and other cases, they argue that where a
6    consumer's desire is contingent on a substantive change to the product, it cannot support
7    injunctive standing.  No. 22-CV-00001-WHO, 2022 WL 1471454 at *11 (N.D. Cal. May 10,
8    2022) (allegation that the plaintiff "would only buy the products in the future if the products were
9    'reformulated' to contain different ingredients than their current iteration" is "insufficient for
10   injunctive relief").  They further argue that even if Plaintiffs did consider a purchase in the future,
11   they are now "aware that [the] Product contains non-natural ingredients [and] are not in danger of
12   being allegedly misled into purchasing any Melatonin product again, much less this particular
13   sleep aid."  Mot. at 30 (citing, among others, *Cordes v. Boulder Brands USA, Inc.*, No. 20-CV-
14   02857-EMC, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018)).

15   In response, Plaintiffs contend that the have properly pled a desire to purchase the Product
16   short of reformulation, desiring simply to buy it "as advertised."  Opp. at 30 (quoting *Lesh v. D's*
17   *Naturals, LLC*, No. 22-CV-01036-HSG, 2023 WL 2530986 at *3–4 (N.D. Cal. Mar. 15, 2023)).
18   They further argue that even though they now understand that the Product contains synthetic
19   ingredients, future deception is not ruled out, since Plaintiffs "cannot be certain that the next time
20   they encounter the Products in a store [Defendant] will not have corrected the problem and
21   manufactured Products that cause sleep naturally."  Opp. at 32.

22   At bottom, the question is this: can the label misrepresentation at issue plausibly impair
23   Plaintiffs' future reliance on the Product's labels?  The Court concludes that the answer is no.
24   While Defendant has somewhat overstated its position – for example, the Court is satisfied that
25   Plaintiffs have alleged a desire to purchase the Product as they understand it to be advertised (i.e.
26   as an all-natural sleep-aid) – it is ultimately correct that given the challenged representation and
27   label design in *this* case, Plaintiffs have not be plausibly pled a risk of future deception.  Where, as
28   here, the front label clearly contains both the challenged representation (i.e. the phrase "naturally")

United States District Court
Northern District of California

*and* the information necessary to test the veracity of that representation (i.e. identification of ingredients Plaintiffs now understand to be synthetic), Plaintiffs encountering the Product in the future could not "reasonably, but incorrectly" assume that the Product formerly "marred" by deceptive advertising has been "improved."  *Davidson*, 889 F.3d at 970–72.  As such, they do not have standing.

*Davidson* is instructive.  That case concerned a plaintiff, Jennifer Davidson, who purchased wipes advertised as "flushable" which turned out not to be.  Ms. Davidson pled that she "continue[d] to desire to purchase wipes that are suitable for disposal in a household toilet," but had "no way of determining whether the representation 'flushable' [was] in fact true." *Davidson*, 889 F.3d at 970–71.  The Court found that the Ms. Davidson had standing for injunctive relief, because even if she knew that the "flushable" labeling was false at the time of purchase, "[s]hould [Davidson] encounter the denomination ['flushable'] on a [Kimberly–Clark wipes package] at the grocery store today, [she] could not rely on that representation with any confidence." *Id*. at 971. (quoting *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) (alterations in original).  "In other words, Davidson faces the similar injury of being unable to rely on Kimberly–Clark's representations of its product in deciding whether or not she should purchase the product in the future." *Id*. at 971–72.

Where, as in *Davidson*, the consumer has no ability to test the continued falsity or veracity of the challenged representation short of buying and then using the product, the consumer's future reliance on the product's labeling is clearly impaired so as to establish standing.  However, courts in this circuit have taken different approaches in evaluating what degree of future risk a consumer faces where he has *some* ability to evaluate the ongoing falsity or veracity of the challenged representation at the point of purchase.  *See Julian v. TTE Tech., Inc.*, No. 20-CV-02857-EMC, 2021 WL 810228 (N.D. Cal. Mar. 3, 2021) (discussing different approaches).  Some district courts have found that "[a]lthough some part of a product's packaging may be misleading, when another part of that product's packaging discloses the truth of the product . . . a plaintiff's knowledge of the truth forecloses the risk of future harm." *Joslin v. Clif Bar & Co.*, No. 4:18-CV-04941-JSW, 2019 WL 5690632 at *4 (N.D. Cal. Aug. 26, 2019) ("Unlike *Davidson*, where the plaintiff could

14

1    not know without purchasing the flushable wipes whether the wipes were truly flushable,

2    Plaintiffs do not need to purchase the Products again in order to know whether the Products

3    contain real white chocolate . . . . Instead, Plaintiffs need only inspect the ingredient list to

4    discover that the Products do not contain white chocolate."); *see also Cordes*, 2018 WL 6714323

5    at *4 (finding that unlike the plaintiff in *Davidson*, who could not "easily discover" whether a

6    previous misrepresentation persists, plaintiff in *Cordes* can "easily determine" if the defendant has

7    cured the alleged deception in the future by reading the pretzel label prior to purchase); *Rahman v.

8    Mott's LLP*, No. 13-cv-03482-SI, 2018 WL 4585024 at *3 (N.D. Cal. Sept. 25, 2018).  But others

9    have concluded that the reasoning in *Davidson* should not require consumers to scour labels to

10   determine if a product previously marred by a misrepresentation has been improved.  *See Shank v.

11   Presidio Brands, Inc.*, No. 17-CV-00232-DMR, 2018 WL 1948830 at *4 (N.D. Cal. Apr. 25,

12   2018) ("*Davidson*'s adoption of the analysis in *Ries* strongly suggests that the Ninth Circuit would

13   reject Presidio's reasoning that a plaintiff cannot establish standing for injunctive relief if she can

14   check whether she is being lied to by examining the fine print on a product label."); *see also

15   Tucker v. Post Consumer Brands*, LLC, No. 19-CV-03993-YGR, 2020 WL 1929368 at *6 (N.D.

16   Cal. Apr. 21, 2020).

17          At some level, these decisions are grappling with how much a consumer should be

18   expected to look beyond the front label in a future purchase encounter to test whether the

19   misrepresentation persists.  But this case presents a simpler fact pattern, since the front label *itself*

20   contains both the challenged representation and the information necessary to test its continued

21   (alleged) falsity.  In other words, the Product's front label alone is capable of "confirm[ing] or

22   deny[ing]" Plaintiffs' suspicions if encountered in the future: the prominent reference to

23   ingredients Plaintiffs now understand to be non-natural (i.e. melatonin and vitamin B6) would

24   confirm that the Product has not been "improved." *Davidson*, 889 F.3d at 970.  Though the side

25   label would reinforce this conclusion, Plaintiffs would not even need to "consult the ingredient list

26   to try to discern" that the Product is still not one they want.  *Tucker*, 2020 WL 1929368 at *6.

27   Accordingly, construing the pleadings in the light most favorable to Plaintiff, as it must, the Court

28   finds that it would be unreasonable for Plaintiffs to purchase the Product as labeled in the future

1  and assume the Product was improved to deliver sleep "naturally," as Plaintiffs say they
2  understand the term.
3      Because Plaintiffs fail to plead a risk of future harm under *Davidson*, the Court finds that
4  they do not have standing to pursue injunctive relief, and **GRANTS** Defendant's motion to
5  dismiss on this theory with leave to amend.

### D.    Equitable and Injunctive Relief

Finally, Defendant argues that Plaintiffs cannot seek equitable relief because they do not articulate how their other legal remedies are inadequate. Mot. at 26–27. The Court agrees, but will give Plaintiffs an opportunity to properly plead facts supporting injunctive relief.

'In order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022), *accord Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Courts applying *Sonner* – a controlling case on this issue – have distinguished between equitable relief for past harm, including restitution and disgorgement, and injunctive relief for future harm. *See, e.g.*, *Ary v. Target Corp.*, No. 22-CV-02625-HSG, 2023 WL 2622142 at *4–5 (N.D. Cal. Mar. 23, 2023) (dismissing request for restitution for lack of equitable jurisdiction and maintaining injunctive relief claim); *Price v. Wells Fargo & Co.*, No. 22-CV-03128-JSC, 2022 WL 17821590, at *1–2 (N.D. Cal. Dec. 6, 2022) (same); *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2020 WL 6544411, at *6–7 (N.D. Cal. Nov. 6, 2020) (dismissing requests for restitution and disgorgement but finding plaintiff lacked an adequate legal remedy for future harm); *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 917–18 (E.D. Cal. 2020) (finding "plaintiff may pursue her equitable claims for injunctive relief to the extent they are premised on alleged future harm").

Here, Plaintiffs have not alleged or established that they lack an adequate remedy at law in the form of damages for past harm, so the Court finds that it lacks equitable jurisdiction over Plaintiffs' requests for restitution and disgorgement. And while the Court agrees with the general principle stated by Plaintiffs that "an injunction halts future misconduct," and observes that

1  labeling cases such as these *can* involve the risk of prospective harm amenable to an injunctive
2  remedy, the Court has already found that Plaintiffs' allegations do not support Article III standing
3  for an injunction (which is the only forward-looking equitable remedy the Court understands
4  Plaintiffs to request). As such, it must dismiss Plaintiffs' requests for injunctive relief. However,
5  given that the Court cannot rule out at this early stage of litigation that Plaintiffs could plead facts
6  that support prospective relief, the Court will permit amendment.

Thus, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiffs' requests for restitution and disgorgement under the FAL and UCL without leave to amend and without prejudice to refiling in state court, as *Guzman* instructs. *See* 49 F.4th at 1314–15. Plaintiffs' requests for injunctive relief under those provisions are also **DISMISSED** with leave to amend.

## IV. CONCLUSION

The Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss, Dkt. No. 39, and **GRANTS** Defendant's request for judicial notice, Dkt. No. 39-1. Any amended complaint is due by December 21, 2023.

The Court further **SETS** a telephonic case management conference on January 16, 2024 at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929

Passcode: 6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy. For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. The Court **DIRECTS** the parties to meet and confer and submit a joint case management statement by January 9, 2024. The parties should be prepared to discuss how to move this case forward efficiently.

**IT IS SO ORDERED.**

Dated: 11/21/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge